## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| D.J. SIMMONS COMPANY | ) | Case No. 16-11763-JGR |
| LIMITED PARTNERSHIP | ) | |
| EIN: 85-0413146, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| KIMBETO RESOURCES, LLC | ) | Case No. 16-11765-JGR |
| EIN: 85-0473314, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| D.J. SIMMONS, INC. | ) | Case No. 16-11767-JGR |
| EIN: 85-0407729, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | **Jointly Administered as** |
| | ) | **Case No. 16-11763-JGR** |

---

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL OF EXISTING SECURED LENDER, (II) GRANTING ADEQUATE PROTECTION FOR USE THEREOF, AND (III) MODIFYING THE AUTOMATIC STAY TO ALLOW FOR THE RELIEF REQUESTED HEREIN

---

This matter is before the Court on the Motion for Entry of Interim and Final Orders (i) Authorizing the Debtors to Use Cash Collateral of Existing Secured Lender, (ii) Granting Adequate Protection for the Use Thereof, (iii) Modifying the Automatic Stay and (iv) Scheduling a Final Hearing of the above-captioned Debtors-in-possession (the "Debtors") (Dkt. #54, the "Motion").[1]

---

[1] All capitalized terms not defined herein shall have the meaning given to them in the Motion.

On April 15, 2016, the Court entered an Agreed Interim Order (I) Authorizing the Debtors to Use Cash Collateral of Existing Secured Lender (II) Granting Adequate Protection of ruse thereof (III) Modify the Automatic Stay to Allow for the Relief Requested Herein and (IV) Scheduling a Final Hearing (Dkt. #77). The Debtors and the Secured Party (defined below) filed two motions to extend this Court's interim orders: (i) Joint Motion to Extend the Deadline of Agreed Interim Orderand (ii) the Second Motion to Extend the Deadline of Agreed Interim Order. The Court granted both motions and entered an Agreed Second Interim Order (Dkt #89) and an Agreed Third Interim Order (Dkt. #122).

On August 5, 2016, the BOKF, N.A. d/b/a Bank of Oklahoma formerly Bank of Oklahoma, NA, as lender (the "Secured Party") filed its Objection to Debtors' Motion for Final Order Approving Use of Cash Collateral (the "Objection"). On August 8, 2016, the Debtors filed a Supplement to its Motion, with a proposed final order.

The Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A), (G), (K), (M) and (O); venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion is adequate and appropriate under the particular circumstances.

A hearing having been held on August 10, 2016, to consider the relief requested in the Motion; upon the record of the hearing and all proceedings had before the Court; the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; that the Debtors have shown good,

2

sufficient, and sound business purpose and justification for the relief requested in the Motion; and after due deliberation and sufficient cause appearing; therefore, the Court hereby finds:

A.      Debtors filed voluntary petitions for relief pursuant to chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on March 1, 2016 (the "Petition Date"), with the United States Bankruptcy Court for the District of Colorado (the "Court").

B.      The Office of the United States Trustee (the "U.S. Trustee") has not appointed an official committee of unsecured creditors (together with any other statutory committee, a "Committee").

C.      The Debtors are continuing to manage and operate their businesses and assets as Debtors and Debtors in possession pursuant to Bankruptcy Code §§ 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

D.      On March 9, 2016, the Court ordered that Debtors' chapter 11 cases be jointly administered under this lead bankruptcy case.

E.      Debtors, as borrowers, and the Secured Party, as lender, are parties to that certain revolving line of credit, originally dated September 20, 2002 (as amended, restated, supplemented or otherwise modified through the Petition Date, the "Original Credit Agreement" and, together with all related credit and security documents, the "Loan Documents"). As of the Petition Date, the Debtors were indebted and liable to the Secured Party under the Loan Documents in the aggregate principal amount of not less than $9,156,050 million plus any amounts unpaid, incurred, or accrued prior to the Petition Date in accordance with the Loan Documents (including, to the extent owed under the Loan Documents, all "Obligations" as defined in the Loan Agreement) (collectively, the "Prepetition Obligations"). To secure the Prepetition Obligations, the Debtors granted to the Secured Party liens on and security interests

3

in (the "Prepetition Liens") most of the Debtors' assets and property, including such assets and property as described in the Loan Documents, and the proceeds thereof (collectively, the "Collateral").

      F.      Subject to paragraphs 18 through 20 herein, the Debtors stipulate that, as of the Petition Date (collectively, the "Stipulations"): (i) the Prepetition Obligations are legal, valid, binding and enforceable against the Debtor; (ii) the Prepetition Liens constitute legal, valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral, including all Cash Collateral,[2] regardless of in which deposit accounts it is held; (iii) the Prepetition Liens are senior in priority to any and all other liens on the Prepetition Collateral, other than the senior third party liens; and (iv) the Debtors and their estates have no claims, objections, challenges, causes of actions, and/or choses in action, including, without limitation, "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including, without limitation, any recharacterization, subordination, avoidance, disgorgement, recovery or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against the Secured Party or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the Original Credit Agreement, the Prepetition Obligations, or the Prepetition Liens.

      G.      The Debtors require the use of the Cash Collateral in order to continue the Debtors' ordinary course business operations and to maintain the value of their bankruptcy estates. The Debtors are permitted to use Cash Collateral, on an final basis, on the terms and

---

[2] "Cash Collateral," as used herein, shall have the meaning set forth in section 363(a) of the Bankruptcy Code. Not all revenue generated or funds held by the Debtors is the Security Party's Cash Collateral, including funds received or future distribution from Twin Stars Compression, LLC.

4

conditions provided for herein, with such rights expiring as set forth in paragraph 10 hereof but in no event later than December 31, 2016 (the "Final Period"). The Debtors shall not use Cash Collateral except in accordance with the terms and conditions contained in this Final Order and the Budget (as defined below) for the Final Period subject to the Permitted Variance (as defined below). Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates or other proceeds resulting therefrom outside the ordinary course of business, except as permitted herein (subject to any required Court approval).

H.      Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The Debtors' use of Cash Collateral is necessary to preserve the bankruptcy estates, and will avoid immediate and irreparable harm to the Debtors, their bankruptcy estates and assets, prior to the expiration of the Final Period specified herein.

**Accordingly, it is therefore and hereby ORDERED that:**

1.      The Motion is hereby granted on an final basis in accordance with the terms of this Final Order. Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled are hereby denied and overruled. This Final Order shall constitute findings of fact and constitute conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date.

2.      The Debtors are hereby authorized, on a final basis, to use Cash Collateral only in accordance with the Budget (including the Permitted Variance) and the terms and conditions provided in this Final Order until the occurrence of a Termination Event (as defined below) or as otherwise ordered by the Court.

3.      The Debtors shall not be authorized to use any cash during the Final Period except as expressly permitted herein. The Debtors shall be permitted to use Cash Collateral solely to pay

5

the expenses described in the budget attached hereto as **Exhibit A** (as such budget may be amended, modified or supplemented in accordance with this Final Order, the "Budget") for the Final Period, solely up to the amounts, at the times and for the purposes identified in the Budget.[3] The Debtors shall not, without the prior written consent of the Secured Party, use Cash Collateral with respect to any line item for any calendar month in the Budget in an amount in excess of the amount budgeted for such line item for such month in the Budget; provided, however, that there shall be a permitted variance (the "Permitted Variance"), except with respect to the salary of each individual specifically named in the Budget, of 10% for any line item expenditures listed in any month in the Budget. Notwithstanding the foregoing, for exceptional, unanticipated expenditures that are not contemplated by the Budget, the Debtors and the Secured Party may agree that such expenditures, if approved by the Secured Party in its sole discretion, are not credited against the Permitted Variance. Any amounts or expenses listed in any line item in the Budget that are unused in any month may be carried over and used by the Debtors in any subsequent month for such line item.

4.       With the approval of the United States Trustee, the Debtors and the Secured Party may extend the Final Period, without further notice to creditors or order of this Court; provided that a stipulation extending this Final Order signed by the Debtors and the Secured Party is filed together with a copy of a budget if there are changes from the Budget.

*i.*       ***Adequate Protection to the Secured Party***

5.       As a result of the use of the Cash Collateral authorized herein, the Secured Party is entitled, pursuant to section 361, 362, and 363(e) of the Bankruptcy Code, to receive adequate

---

[3] The Budget includes Debtors' budget from the Petition Date until December 31, 2016. The Secured Party has consented to each month of the Budget and, to the extent the Secured Party does not consent, the Budget is approved on a final basis by the Court through this Final Order.

protection of its interests on account of the diminution in value of the Collateral from and after

the Petition Date, if any, and to the extent that any diminution is also not subject to or offset by

surcharge under 11 U.S.C. § 506(c), if any, in accordance with section 506(a) of the Bankruptcy

Code and arising from the imposition and enforcement of the automatic stay of section 362(a) of

the Bankruptcy Code, but only to the extent the Secured Party has a valid, perfected prepetition

lien and security interest in such Collateral at the Petition Date.

      6.     The Secured Party is hereby granted the following adequate protection (the

"Adequate Protection") effective upon the Petition Date and without the necessity of the

execution or filing of mortgages, security agreements, pledge agreements, or financing

statements, or otherwise:

      (a)     Adequate Protection Liens. To the extent of any diminution in the value of
its Collateral, the Secured Party shall have valid, binding, perfected, continuing,
enforceable and non-avoidable replacement security interests in, and liens upon (the
"Adequate Protection Liens") all of the Debtors' assets and property, including, without
limitation, the Collateral, except (i) avoidance actions under chapter 5 of the Bankruptcy
Code, which shall be senior to all other liens; and (ii) the membership interest in the Twin
Stars Compression LLC, but the Adequate Protection Liens will attach to the Debtors'
economic interest (ie: right to receive proceeds or distributions from Twin Stars). The
Adequate Protection Liens shall be subject to prior payment of the Carve Out (as defined
below), including U.S. Trustee fees and unpaid professional fees approved by the Court,
to the extent the professional fees are paid from property that is not Cash Collateral;

      (b)     Adequate Protection Superpriority Claims. To the extent of any
diminution in value of the Collateral, if any, from and after the Petition Date, in
accordance with Section 506(a) of the Bankruptcy Code, arising from the imposition and
enforcement of the automatic stay of section 363(a) of the Bankruptcy Code, the Secured
Party is hereby granted allowed senior administrative expense claims (collectively, the
"Adequate Protection Superpriority Claims") in the Debtors' Chapter 11 Cases (as
defined below) with priority over any and all administrative expenses, adequate
protection claims and all other claims against the Debtors, now existing or hereafter
arising, of any kind whatsoever, as provided in section 507(b) of the Bankruptcy Code,
including, without limitation, all administrative expenses of the kinds specified in or
ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a),
503(b), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and
1114, but subject to prior payment of (i) the U.S. Trustee fees and (ii) unpaid professional

fees approved by the Court for services performed from the Petition Date through the Final Period; and

(c)   Financial and Other Reporting. On each Wednesday (or in the event such Wednesday is not a Business Day, the first Business Day thereafter) of each week, the Debtors will provide to the Secured Party's counsel (w) a report for the previous week of the cash balances, deposits, and withdrawals from D.J. Simmons, Inc.'s Wells Fargo DIP account and an internal disbursement schedule showing the payee and other relevant information regarding each disbursement, and (x) an update, if any, of the Budget through the end of the Final Period (for forecasting and informational purposes only).

7.      The Adequate Protection Liens shall be valid and enforceable against any trustee appointed in the Debtors' above-captioned chapter 11 cases (the "Chapter 11 Cases"), or in any case under chapter 7 of the Bankruptcy Code upon conversion of the Chapter 11 Cases (a "Successor Case"), or upon the dismissal of the Chapter 11 Cases or any Successor Case. No lien or interest avoided and preserved for the benefit of the estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

8.      This Final Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the Adequate Protection Liens without the necessity of executing, filing or recording any financing statement, deed of trust, mortgage, security agreement, notice of lien, pledge agreement or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Adequate Protection Liens or to entitle the Adequate Protection Liens to the priorities granted herein. Notwithstanding the foregoing, the Secured Party may, in its sole discretion, file such financing statement, deed of trust, mortgage, security agreement, notice of lien, pledge agreement and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices of lien, pledge agreements or other agreements or

8

documents shall be deemed to have been filed or recorded at the time and on the date of the

commencement of each Chapter 11 Case. A certified copy of this Final Order may, in the

discretion of the Secured Party, be filed with or recorded in filing or recording offices in addition

to or in lieu of such financing statements, deeds of trust, mortgages, security agreements, notices

of lien, pledge agreements and other similar documents, and all filing offices are hereby

authorized to accept such certified copy of this Final Order for filing and recording. The Debtors

are authorized and directed to execute and deliver to the Secured Party all such financing

statements, deeds of trust, mortgages, security agreements, notices of lien, pledge agreements

and other documents as the Secured Party may reasonably request to evidence, confirm, validate,

or perfect the Adequate Protection Liens.

9.       The authorization of the Debtors to use Cash Collateral under this agreed Final

Order will terminate upon five (5) days' prior written notice by the Secured Party to the Debtors

of the occurrence of any of the following (except for the event in subparagraph (a) below, upon

which event a termination will occur automatically) (each of the following, a "Termination

Event"):

(a)      This Court enters an order dismissing the Chapter 11 Cases or any of them
or converting the Chapter 11 Cases or any of them to cases under chapter 7;

(b)      This Court enters an order appointing a chapter 11 trustee in the Chapter
11 Cases, or any of them, that is not stayed following entry;

(c)      This Court enters an order staying, reversing, or vacating, in a manner
materially adverse to the Secured Party and without prior consent of the Secured Party, this Final
Order;

(d)      An order of this Court shall be entered appointing an examiner with
enlarged powers in the Chapter 11 Cases, or the Debtors shall file a motion or other pleading
seeking the dismissal of their Chapter 11 Cases under section 1112 of the Bankruptcy Code or
otherwise;

9

(e)     Except as expressly allowed in this Final Order, an order of this Court shall be entered granting any lien on, or security interest in, any Prepetition Collateral in favor of any party other than the Secured Party, that is senior to, or *pari passu* with, the Prepetition Liens or the Adequate Protection Liens or granting an administrative claim payable by the Debtors to any party other than the Secured Party, that is senior to the Adequate Protection Superpriority Claim without the express written consent of the Secured Party;

(f)     An order of this Court shall be entered granting relief from the automatic stay under section 362 of the Bankruptcy Code with respect to all or any material portion of the property of the Debtors' estates or any of them;

(g)     The Debtor files a motion seeking to obtain any credit or incur any financing indebtedness that is secured by a lien on, or security interest in, the Prepetition Collateral which is senior to or *pari passu* with the Prepetition Liens or the Adequate Protection Liens, or having administrative priority status which is senior to or *pari passu* with the Adequate Protection Superpriority Claims;

(h)     The Debtor shall file any pleading seeking, or otherwise consenting to, or shall support or acquiesce in any other person's motion as to, any of the matters set forth in paragraphs (a) through (g) above;

(i)      Debtors or any of them shall fail to comply with the terms of this Final Order in any material respect, it being understood that non-compliance with the Permitted Variance shall constitute material non-compliance with this Final Order; or

(j)     December 31, 2016.

10.     Upon the occurrence of a Termination Event, the Debtors shall no longer have the right to use Cash Collateral, pursuant to any further order of the Court. Nothing in this Final Order shall preclude the Debtors' right to seek nonconsensual use of Cash Collateral, or any right of the Secured Party, or any other party in interest, to oppose such request.

11.     The Secured Party shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, including, and subject only to, and effective upon, entry of a final (i.e., not interim) order authorizing the Debtors' use of Cash Collateral (a "Final Order"), that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Secured Party with respect to proceeds, product, offspring or profits of any of the Collateral.

12.     Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the Adequate Protection provided to the Secured Party hereunder is insufficient to compensate for any use of the Collateral during the Chapter 11 Cases or any Successor Case.

13.     All of the Debtors' rights to surcharge costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Case at any time shall be preserved and may be asserted against the Secured Party's Collateral, Adequate Protection Liens, Prepetition Liens or Collateral, including Cash Collateral, pursuant to sections 506(c) or 105(a) of the Bankruptcy Code, or otherwise. Provided, however, nothing contained in this Final Order shall be deemed a consent by the Secured Party to any charge, lien, assessment or claim against, or in respect of, the Collateral, including Cash Collateral, under section 506(c) or 105(a) of the Bankruptcy Code, or otherwise.

14.     Upon reasonable notice, the Secured Party, and its consultants and advisors, shall be given reasonable access to the Debtors' books, records, assets and properties for purposes of monitoring the Debtors' businesses and the value of the Collateral, and shall be permitted to conduct, at its discretion, visits, inspections and investigations in respect of the Collateral, in each case, in accordance with the Loan Documents.

15.     The Secured Party has acted in good faith (including, without limitation, for the purposes of section 363(m) of the Bankruptcy Code) in connection with this Final Order and its reliance on this Final Order has been and is in good faith.

16.     The provisions of this Final Order shall be binding upon and shall inure to the benefit of the Secured Party and the Debtors and their respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter appointed for the Debtors

11

or with respect to the property of the estates of the Debtors) whether in the Chapter 11 Cases, in

any Successor Case, or upon dismissal of any such Chapter 11 or chapter 7 cases.

17.     As used in this Final Order, the "Carve-Out" means: (a) the unpaid quarterly fees

required to be paid pursuant to 28 U.S.C. § 1930(a), together with interest payable thereon

pursuant to applicable laws and any fees payable pursuant to the Clerk of the Bankruptcy Court,

(b) to the extent paid from property that is not Cash Collateral, the allowed and reasonable fees

and expenses of professionals employed by the Debtors pursuant to sections 327 and 328 of the

Bankruptcy Code, and (c) upon the entry of an order of the Court approving the sale by the

Debtors of substantially all of their assets to the Secured Party (or its designee), an amount

necessary to wind-down the Debtors' bankruptcy estates, not to exceed $25,000, which may be

used to satisfy unpaid administrative expense claims. Under no circumstances shall any Cash

Collateral be used for, apply to or be available for any fees or expenses incurred by any party,

including the Debtors or their professionals, in connection with, or relating to, the initiation or

prosecution of any claims, causes of action or other litigation against the Secured Party,

including without limitation, challenging the amount, validity, perfection, priority, or

enforceability of or asserting any defense, counterclaim, or offset to, the Original Credit

Agreement, the Prepetition Obligations, the Loan Documents, or the Adequate Protection Liens

or Adequate Protection Superpriority Claims.

18.     Notwithstanding anything herein to the contrary, the Debtor shall have until

August 15, 2016, which is 120 days from entry of the first interim order (the "Investigation

Termination Date") to investigate the validity, perfection, enforceability, and extent of any

Prepetition Obligations and Prepetition Liens and any potential claims of the Debtor or its estate

against the Secured Party in respect of the applicable Prepetition Obligations and Prepetition

12

Liens, "lender liability" claims and causes of action, or any actions, claims, or defenses under chapter 5 of the Bankruptcy Code (all such claims, defenses, and other actions described in this paragraph are collectively defined as the "Claims and Defenses").

19.     Any challenge to the Prepetition Obligations or the Prepetition Liens, or the assertion of any other claims or causes of action of the Debtors or their estates against the Secured Party (including but not limited to, those under sections 506 (subject to any waiver of claims arising under section 506(a) of the Bankruptcy Code as may be provided in the Final Order), 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against the Secured Party) (a "Challenge") must in any case be made (i) by a Committee within 60 days of appointment of such Committee (if such a Committee is appointed by the Investigation Termination Date) and (ii) with respect to the Debtor and any other parties in interest with requisite standing other than the Debtor, on or before the Investigation Termination Date (together, the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period shall be referred to as the "Challenge Period Termination Date"). The applicable Challenge Period may only be extended by written consent of the Secured Party or upon further order of the Court after notice and hearing. Upon the Challenge Period Termination Date without the filing of a Challenge: (A) any and all such Challenges by any party (including, without limitation, any Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed in the Chapter 11 Case, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred, and (B) the Prepetition Obligations shall be deemed to be allowed secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code for all purposes in connection with the Chapter 11 Case, but only in a dollar amount for the value of the

13

Secured Party's Collateral as determined by the Bankruptcy Court or agreed to by the parties, and (C) all of the Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to the Secured Party's claims, liens, and interests shall be of full force and effect and forever binding upon the Debtor, the Debtor's bankruptcy estate and all creditors, interest holders, and other parties in interest in the Chapter 11 Case and any Successor Case. To the extent any Challenge is filed, the Stipulations shall nonetheless remain binding and preclusive except to the extent expressly challenged in such Challenge.

20.     Nothing in this Final Order vests or confers on any party standing or authority to bring, assert, commence, continue, prosecute, or litigate any cause of action belonging to the Debtor or its estate, including, without limitation, the Claims and Defenses with respect to the Prepetition Liens, or the Prepetition Obligations.

21.     Nothing in this Final Order shall be construed as a consent to the allowance of any professional fees or expenses of the Debtors or shall limit or otherwise affect the right of the Secured Party to object to the allowance and payment of any such fees and expenses.

22.     Pursuant to Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry. To the extent applicable, the 14 day stay set forth in Bankruptcy Rule 4001(a)(1) is hereby waived.

23.     The failure of the Secured Party to seek relief or otherwise exercise its rights and remedies under this Final Order, the Loan Documents, or otherwise, as applicable, shall not constitute a waiver of any of the Secured Party's rights hereunder, thereunder, or otherwise. The entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses or remedies of the Secured Party under the Bankruptcy Code or under non-bankruptcy law against

14

any other person or entity in any court, including without limitation, the rights of the Secured

Party (i) to request conversion of the Chapter 11 Case to a case under Chapter 7, dismissal of the

Chapter 11 Case, or the appointment of a trustee in the Chapter 11 Case, (ii) to propose, subject

to the provisions of section 1121 of the Bankruptcy Code, a plan, or (iii) to exercise any of the

rights, claims or privileges (whether legal, equitable or otherwise) on behalf of the Secured

Party.

24.     Except as explicitly provided for herein, this Final Order does not create any

rights for the benefit of any third party, creditor, equity holder or incidental beneficiary.

25.     The provisions of this Final Order and any actions taken pursuant hereto,

including the grant of Adequate Protection Liens and Adequate Protection Superpriority Claims,

shall survive entry of any order which may be entered: (a) converting the Chapter 11 Cases or

any of them to a case or cases under chapter 7 of the Bankruptcy Code; (b) dismissing the

Chapter 11 Cases or any of them or any Successor Case; or (c) pursuant to which this Court

abstains from hearing the Chapter 11 Cases or any of them or any Successor Case.

26.     To the extent there is a conflict between the terms of this Final Order and the

terms of the Motion, this Final Order shall control.

27.     This Court has and will retain jurisdiction to enforce this Final Order according to

its terms.

28.     Notwithstanding any other language in this Final Order (including any budget

approved through the Final Order), nothing in this order excuses, obviates, or otherwise affects

the Debtors' obligation to comply with requirements in connection with the Debtors' interests in

any federal oil and/or gas leases or rights of way (collectively, "Federal Leases"), including

15

without limitation reclamation obligations set forth in 43 C.F.R., Subpart 3162 and bonding

requirements in 43 C.F.R. Subpart 3104.

BY THE COURT:

DATED:  August 12, 2016.

_____
Honorable Joseph G. Rosania, Jr.
United States Bankruptcy Judge

# Exhibit A –Budget

16

|  | **D.J. Simmons et al Budget**<br>**September 2016 thru December 2016** |  |  |  |  |  |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  | Sep-16 | Oct-16 | Nov-16 | Dec-16 | Total |
|  | REVENUE | Forecast---> | Forecast---> | Forecast---> | Forecast---> |  |
|  | *Gross Production Revenue* | *$237,612* | *$237,846* | *$240,427* | *$248,929* | *$964,814* |
|  | Oil | $51,179 | $50,459 | $50,544 | $51,169 | *$203,351* |
|  | Gas (Ltd.) | $186,433 | $187,387 | $189,883 | $197,760 | *$761,463* |
|  | (Less)Severance taxes & other deducts | $32,553 | $32,583 | $32,938 | $34,103 | *$132,177* |
|  | Net production Revenue | $205,059 | $205,251 | $207,489 | $214,826 | *$832,625* |
|  | Income from Services | $10,000 | $10,000 | $10,000 | $10,000 | *$40,000* |
|  | Net Revenue | $215,059 | $215,251 | $217,489 | $224,826 | *$872,625* |
|  |  |  |  |  |  |  |
|  | EXPENSES |  |  |  |  |  |
|  | Direct Production costs |  |  |  |  |  |
|  | Well Project Costs | $147,500 | $17,500 | $2,500 | $2,500 | *$170,000* |
|  | Lease Operating Expense | $129,000 | $121,500 | $127,400 | $116,500 | *$494,400* |
|  | Administrative Expenses |  |  |  |  |  |
|  | Personnel | $34,688 | $48,688 | $27,344 | $18,229 | *$128,949* |
| 83% | Personnel Use of Cash Collateral | $28,791 | $40,411 | $22,696 | $15,130 | *$107,028* |
|  |  |  |  |  |  |  |
|  | Professional Fees (non-legal) Gross | $1,000 | $1,000 | $3,000 | $3,000 | *$8,000* |
| 83% | Professional Fees (non-legal) Use of Cash Collateral | $830 | $830 | $2,490 | $2,490 | *$6,640* |
|  |  |  |  |  |  |  |
|  | Legal Fees suspended |  |  |  |  |  |
|  | General and Administration | $10,500 | $8,500 | $8,500 | $29,000 | *$56,500* |
| 83% | General and Administration Use of Cash Collateral | $8,715 | $7,055 | $7,055 | $24,070 | *$46,895* |

| | D.J. Simmons et al Budget - May - August 2016 | | June | | July | | August | Total |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | **REVENUE** | Forecast---> | | Forecast---> | | Forecast---> | | |
| | Gross Production Revenue | $ | 195,680.33 | $ | 191,579.56 | $ | 233,427.89 | $ 620,687.78 |
| | Oil | $ | 49,434.75 | $ | 47,807.01 | $ | 49,224.54 | $ 146,466.29 |
| | Gas (Ltd.) | $ | 146,245.59 | $ | 143,772.55 | $ | 184,203.35 | $ 474,221.49 |
| | (Less)Severance taxes & other deducts | $ | 26,808.21 | $ | 26,246.40 | $ | 31,979.62 | $ 85,034.23 |
| | Net Production Revenue | $ | 168,872.13 | $ | 165,333.16 | $ | 201,448.27 | $ 535,653.55 |
| | | | | | | | | |
| | Income from Services | $ | 10,000.00 | $ | 10,000.00 | $ | 10,000.00 | $ 30,000.00 |
| | Net Revenue TOTAL | $ | 178,872.13 | $ | 175,333.16 | $ | 211,448.27 | $ 565,653.55 |
| | | | | | | | | |
| | **EXPENSES** | | | | | | | |
| | **Direct Production costs** | | | | | | | |
| | Well Project Costs - | $ | 125,527.00 | $ | 126,500.00 | $ | 147,750.00 | $ 399,777.00 |
| | Lease Operating Expense | $ | 134,150.00 | $ | 134,150.00 | $ | 134,150.00 | $ 402,450.00 |
| | **Administrative Expenses** | | | | | | | |
| | Personnel - Gross | $ | 42,000.00 | $ | 68,125.00 | $ | 34,687.50 | $ 144,812.50 |
| 83% | **Personnel Use of Cash Collateral** | **$** | **34,860.00** | **$** | **56,543.75** | **$** | **28,790.63** | **$ 120,194.38** |
| | | | | | | | | |
| | Professional Fees (non-legal) Gross | $ | 1,000.00 | $ | 1,000.00 | $ | 1,000.00 | $ 3,000.00 |
| 83% | **Professional Fees (non-legal) Use of Cash Collateral** | **$** | **830.00** | **$** | **830.00** | **$** | **830.00** | **$ 2,490.00** |
| | | | | | | | | |
| | Legal Fees - - - - | | | | | | | |
| | General and Administration | | 28,440.00 | | 21,440.00 | | 36,720.00 | $ 86,600.00 |
| 83% | **General and Administration Use of Cash Collateral** | **$** | **23,605.20** | **$** | **17,795.20** | **$** | **30,477.60** | **$ 71,878.00** |

| | D.J. Simmons et al Budget - April-July 2016 | April | May | June | July | Total |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | Forecast---> | Forecast---> | Forecast---> | Forecast---> | |
| | **REVENUE** | | | | | |
| | Gross Production Revenue | $ 162,654.00 | $ 167,059.57 | $ 191,497.11 | $ 205,908.38 | $ 727,119.06 |
| | Oil | $ 30,778.00 | $ 30,527.03 | $ 34,407.57 | $ 36,858.44 | $ 132,571.04 |
| | Gas (Ltd.) | $ 131,876.00 | $ 136,532.54 | $ 157,089.54 | $ 169,049.94 | $ 594,548.02 |
| | (Less)Severance taxes & other deducts | $ 63,525.00 | $ 22,887.16 | $ 26,235.10 | $ 28,209.45 | $ 140,856.71 |
| | Net Production Revenue | $ 99,129.00 | $ 144,172.41 | $ 165,262.00 | $ 177,698.93 | $ 593,262.34 |
| | | | | | | |
| | Income from Services | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 40,000.00 |
| | Net Revenue TOTAL | $ 109,129.00 | $ 154,172.41 | $ 175,262.00 | $ 187,698.93 | $ 626,262.34 |
| | | | | | | |
| | **EXPENSES** | | | | | |
| | **Direct Production costs** | | | | | |
| | Well Project Costs - | $ 32,500.00 | $ 174,280.00 | $ 59,500.00 | $ 171,750.00 | $ 438,030.00 |
| | Lease Operating Expense | $ 107,817.00 | $ 190,650.00 | $ 134,150.00 | $ 134,150.00 | $ 566,767.00 |
| | **Administrative Expenses** | | | | | |
| | Personnel - Gross | $ 46,088.00 | $ 63,000.00 | $ 42,000.00 | $ 42,000.00 | $ 193,088.00 |
| 83% | **Personnel Use of Cash Collateral** | **$ 38,253.04** | **$ 52,290.00** | **$ 34,860.00** | **$ 34,860.00** | **$ 160,263.04** |
| | | | | | | |
| | Professional Fees (non-legal) Gross | | $ 30,500.00 | $ 1,000.00 | $ 1,000.00 | $ 32,500.00 |
| 83% | **Professional Fees (non-legal) Use of Cash Collateral** | **$ -** | **$ 25,315.00** | **$ 830.00** | **$ 830.00** | **$ 26,975.00** |
| | | | | | | |
| | Legal Fees - - - - | | | | | |
| | General and Administration | $ 9,072.00 | $ 28,440.00 | $ 18,440.00 | $ 21,440.00 | $ 77,392.00 |
| 83% | **General and Administration Use of Cash Collateral** | **$ 7,529.76** | **$ 23,605.20** | **$ 15,305.20** | **$ 17,795.20** | **$ 64,235.36** |

D.J. Simmons et al Jointly Administered under Case No. 16-11763-JGR

**Interim Budget - March-May 2016**

| | March | April | May | Total | |
|---|---|---|---|---|---|
| REVENUE | Forecast---> | Forecast---> | Forecast---> | | |
| Gross Production Revenue | $173,539.00 | $162,654.00 | $183,261.00 | $519,454.00 | |
| Oil | $ 25,389.00 | $ 30,778.00 | $ 30,527.00 | $ 86,694.00 | |
| Gas (Ltd.) | $148,150.00 | $131,876.00 | $152,734.00 | $432,760.00 | |
| (Less)Severance taxes & other deducts | $ 1,826.00 | $ 16,525.00 | $ 25,107.00 | $ 43,458.00 | |
| Net Production Revenue | $171,713.00 | $146,129.00 | $158,154.00 | $475,996.00 | |
| Income from Services | $ 14,000.00 | $ 14,000.00 | $ 14,000.00 | $ 42,000.00 | |
| Net Revenue TOTAL | $185,713.00 | $160,129.00 | $172,154.00 | $517,996.00 | |
| | | | | | |
| EXPENSES | | | | | |
| Direct Production Costs | | | | | |
| Well Project Costs - | 0 | $100,500.00 | $248,530.00 | $349,030.00 | |
| Lease Operating Expense | $ 269.00 | $107,697.00 | $128,150.00 | $236,116.00 | |
| Other production expenses | $ 251.00 | $ 120.00 | $ 5,500.00 | $ 5,871.00 | |
| | | | | | |
| Pipeline Expenses | | | $ 500.00 | $ 500.00 | |
| | | | | | |
| Administrative Expenses | | | | $ - | |
| Personnel - Gross | $ 40,402.00 | $ 46,088.00 | $ 63,000.00 | $149,490.00 | |
| 83% Personnel Use of Cash Collateral | $ 33,533.66 | $ 38,253.04 | $ 52,290.00 | $124,076.70 | |
| | | | | | |
| Professional Fees (non-legal) Gross | | | $ 30,500.00 | $ 30,500.00 | Taxes (Laura Jones,P.C.) |
| 83% Professional Fees (non-legal) Use of Cash Collateral. | | | $ 25,315.00 | $ 25,315.00 | |
| | | | | | |
| Legal Fees | | | | $ - | |
| General and Administration Gross | $ 236.00 | $ 7,630.00 | $ 16,940.00 | $ 24,806.00 | |
| 83% General and Administration Use of Cash Collateral | $ 195.88 | $ 6,332.90 | $ 14,060.20 | $ 20,588.98 | |
| | | | | | |
| Insurance Gross | | $ 7,500.00 | | $ 7,500.00 | |
| 83% Insurance Use of Cash Collateral | | $ 6,225.00 | | $ 6,225.00 | |
| | | | | | |
| Facility Gross | | $ 1,442.00 | $ 1,500.00 | $ 2,942.00 | |
| 83% Facility Gross Use of Cash Collateral | | $ 1,196.86 | $ 1,245.00 | $ 2,441.86 | |
| | | | | | |
| | | | | | |
| Funds Not Property of the Estate to be Paid Out | $ 33,821.00 | $ 69,973.00 | $ 70,000.00 | $173,794.00 | Not part of budget |

Exhibit A to Agreed Interim Cash Collateral Order