## UNITED STATED BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| D.J. SIMMONS COMPANY LIMITED | ) | Case No. 16-11763-JGR |
| PARTNERSHIP | ) | |
| EIN: 85-0413146 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| KIMBETO RESOURCES, LLC | ) | Case No. 16-11765-JGR |
| EIN: 85-0473314 | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| D.J. SIMMONS, INC. | ) | Case No. 16-11767-JGR |
| EIN: 85-0407729 | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | **Jointly Administered as** |
| | ) | **Case No. 16-11763-JGR** |

## MOTION FOR ENTRY OF ORDER APPROVING DEBTORS' SALE OF ASSETS, AUTHORITY TO ASSUME AND ASSIGN CERTAIN EXECUTORY FEDERAL LEASES, AND APPROVAL OF COMPROMISE

D.J. Simmons Company Limited Partnership and D.J. Simmons, Inc. (collectively, "Debtors"), file this Motion for Entry of Order Approving Debtors' Sale of Assets, Authority to Assume and Assign Certain Executory Federal Leases, and Approval of Compromise (this "Motion"). In support, the Debtors state as follows:

**A.      Pertinent Background Facts.**

1.      On March 1, 2016 (the "<u>Petition Date</u>"), the Debtors[1] filed their voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>").

2.      On March 9, 2016, the Court granted Debtors' request to jointly administer their related bankruptcy cases, case nos. 16-11763, 16-11765, and 16-11767, under this lead case.

3.      Debtors remain in possession of their property and manage their properties as debtors-in-possession under §§ 1107 and 1108 of the Bankruptcy Code. No trustees, examiners, or committees have been appointed in the Debtors' cases.

4.      Debtors collectively engage in the acquisition, exploration, and development of oil and gas properties, and are primarily focused on extracting proved hydrocarbon reserves from those properties.

5.      Debtors have oil and natural gas reserves from wells operated by D.J. Simmons, Inc., and wells operated by third parties, in Colorado, New Mexico, Utah, and Texas.

6.      To further their chapter 11 reorganization efforts, Debtors have conferred with several creditors and engaged in negotiations regarding disposition of certain property. Debtors are parties to an agreement to explore and develop five federal oil and gas leases with Coleman Oil and Gas, Inc. and others. The Debtors have determined, in their business judgment, that a sale of certain unencumbered assets identified in this Motion is appropriate. Debtors have also taken affirmative steps to confer with governmental agencies representing the lessor of federal mineral leases subject to the proposed sale. The Debtors submit that due to their appropriate judgment, communication, and coordination between several parties, this Motion provides the Court with all

---

[1] An affiliated entity of the Debtors, Kimbeto Resources, LLC ("<u>Kimbeto</u>"), also filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on March 1, 2016.

information necessary to allow Debtors' to sell certain assets outside of the ordinary course of business.

7.      The proposed purchaser is Coleman Oil and Gas, Inc. ("Purchaser"). Debtors and the Purchaser have executed a Purchase and Sale Agreement attached as **Exhibit 1**.[2] The salient terms are:

> A.      Debtors and Purchaser are parties to that certain Participation Agreement covering the exploration and development of certain lands in Rio Arriba County, New Mexico (the "Participation Agreement"). Debtors will withdraw from the Participation Agreement and sell their interest in the subject oil and gas leases to Purchaser;
>
> B.      Purchaser will pay $394,824.40 to Debtors for the Assets;
>
> C.      Purchaser will waive and release its proof of claim no. 6-1, filed in the amount of $14,363.64. The proof of claim is deemed withdrawn upon the Bankruptcy Court's approval of the Purchase and Sale Agreement;
>
> D.      The Bankruptcy Court must approve the Purchase and Sale Agreement and enter an order that authorizes the assignment of Participation Agreement, sale of the Assets to Purchaser free and clear of all encumbrances and all liabilities, and provides that Purchaser is a good faith purchaser and the sale is based on arm's length negotiations; and
>
> E.      The sale must close no later than October 31, 2016.

**B.      The Department of Interior / Office of Natural Resources Revenue is aware of Debtors' intent to assume and assign five executory federal leases related to this sale.**

8.      There are five federal leases that Debtors will assume and assign to complete their obligations under the Purchase and Sale Agreement. *See* Ex. 1, at Ex. A. Prior to filing this Motion, the Debtors have communicated with the Department of the Interior / Office of Natural Resources Revenue ("DOI/ONRR") because they must consent to the transfer of federal mineral leases. DOI/ONRR has provided language for Debtors' proposed order granting this Motion, and Debtors

---

[2] Parties should review the Purchase and Sale Agreement in detail for additional information as Debtors' Motion only discusses salient terms and disclosures necessary for Court approval under the Bankruptcy Code, Bankruptcy Rules, and local rules.

and Purchaser have begun the process to receive DOI/ONRR (and the Bureau of Land Management) consent for the assignment.

## C. Assumption and assignment of the executory federal leases is appropriate.

9. The Debtors seek to assign five federal leases to the same assignee, Coleman Oil and Gas, Inc. Thus, Fed. R. Bankr. P. 6006(e) does not preclude the requested relief.

10. To assume an unexpired lease under § 365(b)(1) of the Bankruptcy Code, Debtors must cure, or provide adequate assurance they will promptly cure, any monetary default under the unexpired lease and to provide adequate assurance of future performance under an unexpired lease. Here, there are no cure issues under the five executory leases. Debtors have confirmed with the DOI/ONRR that no cure amounts are owed under the five subject leases, and 11 U.S.C. § 365(b) is therefore satisfied. Moreover, the DOI/ONRR knows of the Purchaser and, if it does not believe that adequate assurance of future performance has been provided, it can object to this Motion. Debtors are informed of and submit to the Court that all applicable aspects of assumption under 11 U.S.C. § 365 have been satisfied, they anticipate the lessor (DOI/ONRR) will consent to the assumption and assignment of the federal mineral leases.

11. To alleviate any concerns by the DOI/ONRR, Debtors have submitted a proposed order with the assistance of DOI/ONRR. The proposed order addresses limitations and rights the DOI/ONRR requires to consent to proposed assumption, assignment, and sale.

## D. If compromises within the Purchase and Sale Agreement exist, they are fair, reasonable, and in the best interests of Debtors' estates.

12. "In assessing a request to approve a compromise under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, "a court's general charge is 'to determine whether the settlement is fair and equitable and in the best interests of the estate.'" *Official Comm. of Unsecured Creditors v. W. Pac. Airlines, Inc. (In re W. Pac. Airlines, Inc.)*, 219 B.R. 575, 579

4

(D. Colo. 1998) (quoting *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 105 B.R. 971, 976 (D. Colo. 1989)). Although the Court may approve a settlement under Rule 9019, its decision "must be an informed one based upon an objective evaluation of developed facts." *Kaiser Steel*, 105 B.R. at 978; *Reiss v. Hagmann*, 881 F.2d 890, 892 (10th Cir. 1989).

13.     Debtors do not believe they have made any compromises through the Purchase and Sale Agreement. In an abundance of caution, however, Debtors advise that Purchaser has agreed to waive and release its proof of claim for $14,363.64. Withdrawal of this claim through the Purchase and Sale Agreement will allow Debtors to further narrow the amount of creditors and issues related to their upcoming confirmation process. This is in the best interests of the estate and its creditors, and the Court should approve the Purchase and Sale Agreement under Rule 9019 as fair, appropriate, and beneficial to Debtors' bankruptcy estates.

**E.     Debtors have a sound business purpose to complete the proposed sale.**

14.     Approval of a sale of property under Section 363 is warranted where there exists a "sound business reason." *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983). "In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test.'" *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *Castre,* 312 B.R. at 428.

15.     Factors bearing on whether a sound business reason or purpose supports a proposed sale of estate property include (where applicable):

> (1) the proportionate value of the asset to the estate as a whole; (2) the amount of elapsed time since the filing; (3) the likelihood that a plan of reorganization will be proposed and confirmed in the near future; (4) the effect of the proposed disposition on the future plans

> of reorganization; (5) the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property; (6) which of the alternatives of use, sale or least the proposal envisions; and (7) most importantly perhaps, whether the asset is increasing or decreasing in value.

*In re Medical Software Solutions*, 286 B.R. 431, 441 (Bankr. D. Utah 2002) (quoting *Lionel*, 722 F.2d at 1071) (emphasis omitted).

16.     This Court has considerable discretion in evaluating and approving a proposed sale under Section 363(b). *Montgomery Ward*, 242 B.R. at 153; *see Moldo v. Clark (In re Clark)*, 266 B.R. 163, 168 (B.A.P. 9th Cir. 2001) (recognizing that "[r]ulings on motions to sell property of the estate other than in the ordinary course of business pursuant to section 363 are reviewed for abuse of discretion").

17.     The Debtors believe the proposed sale of the Assets listed in Exhibit 1 is prudent and in the best interests of its estate. The Debtors hold a 20% interest in the Participation Agreement and five federal leases, and will sell these unencumbered assets to further their reorganization efforts. The receipt of almost $400,000 is fair and appropriate value as determined by the Debtors and Purchaser, based on their detailed knowledge of the oil and gas leases, property, and expenses related to Debtors' operations.

18.     The property being sold is not subject to any liens or encumbrances. Debtors therefore submit that the property may be sold free and clear of liens, claims, and interests under 11 U.S.C. § 363(f).

19.     The Purchaser is not related to the Debtors, or otherwise an insider of the Debtors or any of its related entities, affiliates, or related to its equity security holders. The Purchase and Sale Agreement was negotiated at arms' length and in good faith as contemplated by 11 U.S.C. § 363(m).

20. The Debtors have fully disclosed and requested this Court's approval of all of the terms and conditions of the proposed sale, and have provided notice as required by the Bankruptcy Rules, the Local Bankruptcy Rules, and as otherwise directed by the Court. All known creditors and parties requesting notice on the Comprehensive Service List have received notice of this Motion. *See In re Colony Hills Assocs.*, 111 F.3d 269, 276-77 (2nd Cir. 1997) (discussing the need to provide notice to all creditors of their right to provide a higher offer). If a higher offer is received during the notice period, the Debtors will consider it and determine whether it is a higher and better offer than provided under the Purchase and Sale Agreement.

21. The Debtors also request that the Court waives the stay provided by Fed. R. Bankr. P. 6004(h) and 6006(d) so, once approved by the Court, the Debtors and Purchaser may promptly close the transaction.

WHEREFORE, the Debtors respectfully request the Court approve the relief requested through this Motion and the Purchase and Sale Agreement attached as Exhibit 1.

Dated this 23rd day of September, 2016.

**LINDQUIST & VENNUM LLP**

By: */s/ Ethan J. Birnberg*
    John C. Smiley, #16210
    Ethan J. Birnberg, #43343
600 17th Street, Suite 1800 South
Denver, Colorado 80202-5441
Telephone: (303) 573-5900
Facsimile: (303) 573-1956
jsmiley@lindquist.com
ebirnberg@lindquist.com
*Attorneys for Debtors*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on or before September 23, 2016, the foregoing **MOTION TO APPROVE SALE OF ASSETS** was served by U.S. Mail, first class postage prepaid, addressed to all parties listed on Comprehensive Service List No. 2, Dated May 27, 2016.

        /s/ Lorri K. Parker

DOCS-#5545196-v2

7

# EXHIBIT 1

# PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement ("Agreement") is made and entered into this 1st day of September, 2016 (the "Execution Date"), by and between Coleman Oil and Gas, Inc. ("Buyer") and D.J. Simmons Company Limited Partnership ("Seller"). Buyer and Seller may each be referred to in this Agreement individually as a "Party" and collectively as the "Parties".

## RECITALS

A.    Buyer and Seller, among others, are parties to that certain Participation Agreement dated April 17, 2013 covering the exploration and development of certain lands located in Rio Arriba County, New Mexico (the "Participation Agreement").

B.    Pursuant to the Participation Agreement, Buyer conveyed to Seller an undivided twenty percent (20%) interest in those oil and gas leases described below.

C.    On August 19, 2016, Seller filed a motion to assume the Participation Agreement under 11 U.S.C. § 365. Buyer and Seller agree that Seller will assume the Participation Agreement and is assigning its interest in the Participation Agreement to Buyer under this Agreement.

D.    Seller wishes to withdraw from the Participation Agreement and to sell all of its right, title and interest in the subject oil and gas leases to Buyer, and Buyer is agreeable to such withdrawal and to the purchase of such right, title and interest, all subject to the terms and conditions of this Agreement.

E.    In light of the fact Seller and its general partner, D.J. Simmons, Inc. (the "GP"), are debtors in possession under Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and filed relief voluntary bankruptcy petition under chapter 11 of the Bankruptcy Code on March 1, 2016 (the "Petition Date"), in the United States District for the District of Colorado (the "Bankruptcy Court"), where Seller's and GP's bankruptcy cases, Case No. 16-11763-JGR and Case No. 16-11767-JGR, respectively, are jointly administered as Case No. 16-11763-JGR (the "Bankruptcy Case"), the Bankruptcy Court must approve the sale and assignment contemplated by this Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    The Assets.  The term "Assets" refers to all of Seller's right, title and interest in:

(a)    the oil and gas leases described on Exhibit A hereto, including any and all amendments, supplements, renewals, extensions and/or ratifications thereof (collectively, the "Leases"), together with each and every kind and character of right, title, claim and interest that Seller has in and to the lands covered by the Leases or any lands pooled, unitized, or communitized therewith (the "Lands");

4204579.2

(b)     the oil, gas, casinghead gas, coalbed methane, and other gaseous (combustible or non-combustible) and liquid hydrocarbons and all other lease substances, subject to or covered by the Leases that may be produced from Seller's interest in the Leases and the Lands;

(c)     the Participation Agreement and any other agreement, if any, executed in connection therewith that directly relate solely to the Leases and Lands;

(d)     the pooling, unitization and communization agreement, declarations and orders and the units created, if any, relating to the Leases and Lands and the production of hydrocarbons from the Leases and the Lands; and

(e)     Seller's files and records relating to the Leases, Lands and/or the Participation Agreement.

2.      <u>Purchase and Sale</u>.  Subject to the terms and conditions of this Agreement, Buyer agrees to purchase from Seller, and Seller agrees to sell, assign, convey and transfer to Buyer, all of Seller's right, title and interest in the Assets.  The effective date of such purchase and sale shall be August 15, 2016.

3.      <u>Consideration</u>.  In consideration for the Assets, at Closing (as defined below) Buyer agrees to:

(a)     pay Seller in cash Three Hundred Ninety-Four Thousand Eight Hundred Twenty-Four Dollars and Forty Cents ($394,824.40); and

(b)     waive and release Fourteen Thousand Three Hundred Sixty-Three Dollars and Sixty-Four Cents ($14,363.64) owed by Seller to Buyer pursuant to the Participation Agreement, including proof of claim no. 6-1 filed by Seller on May 18, 2016, in the Bankruptcy Case. Upon the satisfaction of the conditions set forth in Section 6 of this Agreement, Seller's proof of claim will be deemed withdrawn through this Agreement.

4.      <u>Seller's Representation and Warranties</u>.  Seller represents and warrants to Buyer that as of the date of this Agreement and as of the Closing:

(a)     Seller is a limited partnership duly organized and validly existing under the laws of the State of Delaware and is qualified to carry on its business in the State of New Mexico;

(b)     Seller is authorized under the Bankruptcy Code to carry on its business in the ordinary course.  Subject to the Sale Order (as defined below) and such other authorization as required by the Bankruptcy Court, the execution and delivery of this Agreement does not, and fulfillment of and compliance with the terms and conditions hereof will not, as of Closing, violate, or be in conflict with, any material provision of Seller's governing documents, any material agreements or instrument to which Seller is a party or which Seller or any Asset may be bound, or by any material laws applicable to Seller on any Asset.

DOCS-#5514758-v1

(c)     Upon entry of the Sale Order and such other authorizations as required by the Bankruptcy Court, this Agreement constitutes Seller's and GP's legal, valid and binding obligation, enforceable by its terms.

(d)     Seller and GP have not incurred any liability, contingent or otherwise, for brokers' or finders' fees relating to this Agreement or the transaction contemplated hereby.

(e)     Except for the Bankruptcy Case, there is no action, suit or other proceeding pending or threatened that would prevent or impair Seller's or GP's ability to proceed with the transaction contemplated by this Agreement.

(f)     Seller owns an undivided twenty percent (20%) interest in the Assets. Seller has not assigned, granted, or otherwise transferred to any person or entity, affiliated or non-affiliated, any right, title or interest in the Assets. At Closing, Seller shall not reserve any right, title or interest in the Assets.

(g)     The Assets are now, and will be as of the time of the Closing, free and clear of all liens and encumbrances of any kind or nature.

(h)     From the Petition Date through the Execution Date, Seller and GP have been at all times in the Bankruptcy Case debtor-in-possession pursuant to Section 1107 of the Bankruptcy Code, no trustee or examiner has been appointed in the Bankruptcy Case, and no motion has been filed requesting the appointment of a trustee or examiner or the conversion of the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code.

(i)     Seller and GP have complied with all notice provisions of the Bankruptcy Code.

5.     <u>Covenants by Seller</u>.

(a)     Seller covenants that, from the Execution Date through the Closing, (i) it will not assign, grant, convey or otherwise transfer any interest whatsoever in the Assets; (ii) encumber in any manner whatsoever the Assets or otherwise, grant any security interest in the Assets or (iii) allow any lien or encumbrance to attach to the Assets.

(b)     Following the Execution Date, Seller shall thereafter (and it will cause GP to) diligently pursue the entry of the Sale Order and such other ancillary orders as may be required, and the Buyer agrees that it shall promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Buyer under this Agreement and demonstrating that Buyer is a "good faith" purchaser under section 363(m) of the Bankruptcy Code. In the event that the entry of the Sale Order is appealed or a stay pending appeal is sought, Seller shall diligently oppose the appeal or stay pending appeal and seek the dismissal of any appeal (including any petition for certiorari, motion for rehearing, reargument, reconsideration or revocation). Notwithstanding the foregoing, any resulting amendments, supplements or other modifications to this Agreement or resulting changes to the Sale Order shall be subject to Buyer's approval., acting in its sole discretion. Sellers will provide Buyer with drafts of any and all pleading and proposed

3

orders to be filed or submitted in connection with this Agreement and the transactions contemplated hereby sufficiently in advance of the proposed filing date so as to permit Buyer sufficient time to review and comment on such drafts, and such pleadings and proposed orders shall be in form and substance reasonably acceptable to Buyer. Sellers will give Buyer reasonable advance written notice of any hearings regarding the motions required to obtain issuance of the order, and Buyer will have the right to attend and seek to be heard at any such hearings.

(c)     For purposes of this Agreement, "Sale Order" means an order entered by the Bankruptcy Court approving this Agreement:

(i)     after notice to all parties entitled to notice of the motion in the Bankruptcy Case, and no objections were received or, if objections were received, each was resolved or overruled;

(ii)     that is not subject to a stay pending appeal; and

(iii)     that provides, at least, the following: (A) approval of this Agreement; (B) authorization of the sale of the Assets to Buyer pursuant to this Agreement and the Bankruptcy Code free and clear of all encumbrances and all liabilities of any kind or nature whatsoever, whether at law or in equity, including without limitation, free and clear of any rights or claims based on theories of transferee or successor liability under any applicable laws, whether arising before or after the Petition Date, (C) this Agreement was negotiated, proposed and entered into by the Parties and GP without collusion, in good faith and based on arm's length negotiations; and (D) authorization for the Debtors to assign the Participation Agreement.

6.     Conditions to Closing.

(a)     Buyer shall have no obligation to proceed with the Closing unless the Bankruptcy Court shall have entered the Sale Order and such Sale Order shall be in full force and effect and not stayed and shall not have been reversed or modified since the date of its entry, the time provided by applicable law to appeal or request modification or reconsideration of the such order shall have passed and either (i) no appeals or requests for modifications or reconsideration shall have been filed prior to such time or (ii) in the event any appeal or request has been filed with respect to entry of the Sale the Buyer shall have determined in good faith that the pendency of such appeal or request, if ultimately successful, could not reasonably be expected to materially detract from the value of the Assets or materially increase the liabilities assumed by the Buyer. Further, Buyer shall have no obligation to proceed with the Closing if all of the conditions in this Section 6(a) are not satisfied on or before October 31, 2016.

(b)     Buyer shall have no obligation to proceed with the Closing if (i) any of Seller's representations and warranties set forth in Paragraph 4 of this Agreement are not true and correct as of the Closing and (ii) Seller has not fulfilled its covenant set forth in Paragraph 5 of this Agreement.

(c)     If the conditions set forth in Sections 6(a) and (b) are not met, Buyer may terminate this Agreement. Should Buyer terminate this Agreement pursuant to this Paragraph 6,

DOCS-#5514758-v1

each Party's respective rights and obligations under this Agreement shall no longer be of any force or effect.

      7.    <u>Closing</u>.

      (a)    Unless this Agreement is terminated by Buyer pursuant to Paragraphs 6(a) or 6(b) above, the Closing of the transaction contemplated by this Agreement (the "<u>Closing</u>") shall be held at Buyer's Farmington, New Mexico offices at 9:00 a.m. (Mountain Time) on the third business day following the satisfaction of the conditions set forth in Paragraph 6(a) of this Agreement or at such other time and date as mutually agreed upon by the Parties.

      (b)    At Closing, the following events shall occur, cash being a condition precedent to the others and each being deemed to have occurred simultaneously with the others:

      (i)    Each Party shall execute, acknowledge and deliver to the other Party the assignment in the form of the attached <u>Exhibit B</u> which Assignment shall include a special warranty of title (the "<u>Assignment</u>").

      (ii)    Each Party shall execute, acknowledge and deliver such other conveyances, assignments, transfers and other instruments or forms as required by the applicable governmental authority as may be necessary to transfer the Assets from Seller to Buyer.

      (iii)    Seller shall execute and deliver a certificate of its non-foreign status in the form of the attached <u>Exhibit C</u>.

      (iv)    Buyer shall pay by wire transfer of immediately available funds to an account identified by Seller the cash purchase price of Three Hundred Ninety-Four Thousand Eight Hundred Twenty-Four Dollars and Forty Cents ($394,824.40).

      (v)    Seller shall deliver to Buyer the files and records described in Paragraph 2(e) of this Agreement.

      8.    <u>Post-Closing Matters</u>.

      (a)    Buyer, at its sole expense, shall file of record in Rio Arriba County the Assignment.  Buyer shall also file at its sole expense with the appropriate governmental authority(ies) those forms executed, and acknowledged pursuant to Paragraph 7(b)(ii) of this Agreement.

      (b)    For the avoidance of doubt, upon the completion of the Closing, all of Seller's rights and obligations under the Participation Agreement shall be assigned to Buyer. Seller's rights and obligations will terminate, and Seller shall cease to be a party to the Participation Agreement.

      (c)    Upon completion of the Closing, Buyer's proof of claim no. 6-1, as identified in Paragraph 3(b), shall be deemed withdrawn from the Bankruptcy Case.

(d)     After Closing, Seller and Buyer shall execute and deliver such other instruments and documents and take such other action as may be necessary to evidence and effectuate the transaction contemplated by this Agreement.

9.     <u>Miscellaneous</u>.

(a)     This Agreement shall be governed by and construed in accordance with the laws of the State of Colorado  and where applicable, the Bankruptcy Code.

(b)     The Bankruptcy Court shall have exclusive jurisdiction to resolve any dispute over the meaning, intent, or enforcement of this Agreement.

(c)     All action and communication required pursuant to this Agreement shall be delivered by first class mail or electronic mail:

> <u>To Seller:</u>
>
> D.J. Simmons Company Limited Partnership
> Attention:  Rodney L. Seale
> President/Engineer
> D.J. Simmons, Inc.
> P.O. Box 1469
> Farmington, New Mexico 87499
> rseale@djsimmons.com
>
> <u>To Buyer:</u>
>
> Coleman Oil and Gas, Inc.
> Attention: G. Chris Coleman
> President
> Post Office Drawer 3337
> Farmington, New Mexico 87499
> ccoleman@cog-fmn.com

(d)     The Exhibits attached to this Agreement are incorporated into and made part of this Agreement.

(e)     Each Party shall be solely responsible for all costs and expenses incurred by it in connection with this Agreement and the transaction completed hereunder (including attorneys' fees and costs associated with the Bankruptcy Case).

(f)     This Agreement constitutes the entire agreement reached by the Parties with respect to the subject matter hereof, superseding all prior negotiations, discussions, agreements and understandings, whether written or oral, relating to such subject matter.

(g)     Buyer and Seller acknowledge that they have been represented by counsel throughout negotiation of this Agreement, with respect to drafting and negotiating this Agreement and all matters covered by and relating to it.

6

(h)     This Agreement may be executed in any number of counterparts, and each such counterpart hereof shall be deemed to be an original, and all of which together shall constitute one and the same instrument.

(i)     This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, this Agreement is executed as of the Execution Date.

SELLER

D.J. Simmons Company Limited Partnership by
D.J. Simmons, Inc., its General Partner

By: _Rodney L. Seale_ 9/1/16

Rodney L. Seale, President

BUYER

Coleman Oil and Gas, Inc.

By _____ 9-1-16

G. Chris Coleman, President

7

# EXHIBIT A

Attached to and made a part of that certain Purchase and Sale Agreement dated September 1, 2016 by and between
D.J. Simmons Company Limited Partnership
and
Coleman Oil and Gas, Inc.

| Lease Name / Lessor | Lessee | Date | LEGAL DESCRIPTION | Acres | Book | Page | Ref |
|---|---|---|---|---|---|---|---|
| NMNM-130337 / USA | Coleman Oil and Gas, Inc. | 8/1/2013 | Sec. 07: Lots 5-9, SESW, S2SE<br>Township 32 North, Range 4 West, N.M.P.M. | 262.54 | 536 | 4242 | 2013-04242 |
| NMNM-130338 / USA | Coleman Oil and Gas, Inc. | 8/1/2013 | Sec. 32: S2<br>Township 32 North, Range 4 West, N.M.P.M. | 320.00 | 536 | 4243 | 2013-04243 |
| NMNM-130341 / USA | Coleman Oil and Gas, Inc. | 8/1/2013 | Sec. 09: Lots 1-3, S2NE, SENW,E2SW,SE<br>Township 32 North, Range 5 West, N.M.P.M. | 418.78 | 536 | 4244 | 2013-04244 |
| NMNM-130342 / USA | Coleman Oil and Gas, Inc. | 8/1/2013 | Sec. 21: E2W2<br>Township 32 North, Range 5 West, N.M.P.M. | 160.00 | 536 | 4245 | 2013-04245 |
| NMNM-130343 / USA | Coleman Oil and Gas, Inc. | 8/1/2013 | Sec. 28: E2<br>Township 32 North, Range 5 West, N.M.P.M. | 320.00 | 536 | 4246 | 2013-04246 |

A-1

**Exhibit B**

Attached to and made a part of that certain Purchase and Sale Agreement dated effective September 1, 2016, by and between Coleman Oil and Gas, Inc. and D.J. Simmons Company Limited Partnership

## ASSIGNMENT OF OIL & GAS LEASES

This Partial Assignment of Oil & Gas Leases (this "Assignment"), effective as of August 15, 2016 (the "Effective Date"), is by and between D.J. Simmons Company Limited Partnership ("Assignor"), with an address of P.O. Box 1469, Farmington, New Mexico 87499, and Coleman Oil and Gas, Inc. ("Assignee"), with an address of Post Office Drawer 3337, Farmington, New Mexico 87499.  Assignor and Assignee may each be referred to in this Assignment individually as a "Party" and collectively as the "Parties."

Know all men by these presents, that for the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor does hereby transfer, grant, bargain, sell, convey, and assign to Assignee all of Assignor's right, title, and interest in the following (collectively, the "Assets"):

(a)      the oil and gas leases described on Exhibit A hereto, including any and all amendments, supplements, renewals, extensions, and/or ratifications thereof (collectively, the "Leases"), together with each and every kind and character of right, title, claim and interest that Assignor has in and to the lands covered by the Leases or any lands pooled, unitized, or communitized therewith (the "Lands");

(b)      the oil, gas, casinghead gas, coalbed methane, and other gaseous (combustible or non-combustible) and liquid hydrocarbons and all other lease substances, subject to or covered by the Leases that may be produced from Assignor's interest in the Leases and the Lands;

(c)      the Participation Agreement dated April 17, 2013, by and among Assignor, Assignee, T.H. McElvain Oil & Gas LLLP, JMJ Land and Minerals Company, Juniper Resources, LLC, 10-4-1 Partners, L.P., and PetroQuest, Inc. (the "Participation Agreement"), and any other agreement, if any, executed in connection therewith that directly relate solely to the Leases and the Lands;

(d)      the pooling, unitization and communitization agreement, declarations and orders and the units created, if any, relating to Leases and the Lands and the production of hydrocarbons from the Leases and the Lands; and

(e)      Assignor's files and records relating to the Leases and the Lands.

To have and to hold the Assets unto Assignee, its successors and assigns, forever, subject to the following terms and conditions:

1.     This Assignment is made pursuant to, and is subject to the terms and conditions of, the Purchase and Sale Agreement dated September 1, 2016, by and between Assignor and Assignee (the "PSA").  If there is a conflict between the terms of this Assignment and the terms of the PSA, the terms of the PSA will control to the extent of the conflict.  The Parties intend that the terms of the PSA not merge into the terms of this Assignment.

2.     This Assignment is made subject to all of the terms and the express and implied covenants and conditions of the Leases, to the extent of the rights hereby assigned, which terms, covenants, and conditions Assignee hereby assumes and agrees to perform with respect to Assignee's proportionate share of the Leases and in accordance with the Participation Agreement, and any amendments thereto.  Said terms, covenants, and conditions, insofar as the Lands, shall be binding upon Assignee, not only in favor of the lessor, but also in favor of Assignor and its successors and assigns.

3.     The Leases are assigned by Assignor and accepted by Assignee subject to all leasehold burdens existing as of the Effective Date.

4.     Subject to the terms of this Assignment and the PSA, Assignor agrees to warrant and forever defend title to the Assets unto Assignee against the claims and demands of all persons claiming, or to claim the same, or any part thereof, by, through, or under Assignor, but not otherwise.

5.     The Parties expressly acknowledge and agree that the Assets include all of Assignor's right, title, and interest in and to the Participation Agreement, and that upon the execution of this Assignment, (a) Assignor shall have no remaining right, title, or interest of any kind or character in the Participation Agreement, and (b) Assignee shall have no liability or obligation of any kind or character to Assignor with respect to the Participation Agreement.

6.     The terms, covenants, and conditions of this Assignment shall be binding upon and shall inure to the benefit of Assignor and Assignee and their respective successors or assigns, and such terms, covenants, and conditions shall be covenants running with the Lands and the Leases and with each transfer or assignment of said Lands or Leases.

7.     The Exhibit attached to this Assignment is incorporated into and made part of this Assignment.

8.     This Assignment may be executed in any number of counterparts, with each Party executing separate counterparts, each of which shall be deemed an original instrument, but all of which together shall constitute but one and the same instrument.

*[Signature Pages Follow.]*

In witness whereof, the Parties have executed this Assignment on the dates contained in the acknowledgements, but effective for all purposes as of the Effective Date.

**ASSIGNOR**

D.J. Simmons Company Limited Partnership by D.J. Simmons, Inc., its General Partner

By:  _____

Rodney L. Seale, President

**Assignor's Acknowledgement**

STATE OF _____        §
                                §§
COUNTY OF _____         §

This instrument was acknowledged before me this ___ day of _____, 2016, by Rodney L. Seale, as President of D.J. Simmons, Inc., the General Partner of D.J. Simmons Company Limited Partnership, on behalf of D.J. Simmons Company Limited Partnership.

_____

Notary Public

My Commission Expires: _____

*Signature Page to Assignment of*
*Oil & Gas Leases*

**Exhibit C**

Attached to and made a part of that certain Purchase and Sale Agreement dated effective August 15, 2016, by and between Coleman Oil and Gas, Inc. and D.J. Simmons Company Limited Partnership

**NON-FOREIGN PERSON AFFIDAVIT**

TO:    Coleman Oil and Gas, Inc.

Section 1445 of the Internal Revenue Code provides that a transferee (buyer) of a U.S. real property interest must withhold tax if the transferor (seller) is a foreign person. To inform the transferee that withholding of tax is not required upon the disposition of a U.S. real property interest by D. J. Simmons Company Limited Partnership, a Delaware partnership, hereinafter referred to as the transferor, the undersigned hereby certifies the following on behalf of the transferor:

1.    The transferor is not a foreign corporation, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations);

2.    The transferor's U.S. employer identification number is 85-0413146; and

3.    The transferor's address is:

D.J. Simmons Company Limited Partnership
1009 Ridgeway Place, Suite 200
Farmington, New Mexico 87401

The transferor understands that this certification may be disclosed to the Internal Revenue Service by transferee and that any false statement contained herein could be punished by fine, imprisonment, or both.

Under penalties of perjury I declare that I have examined this certification and to the best of my knowledge and belief it is true, correct and complete, and I further declare that I have authority to sign this document on behalf of the transferor.

This Affidavit is as of _____, 2016.

D.J. Simmons Company Limited Partnership by
D.J. Simmons, Inc., its General Partner

By:_____
       Rodney L. Seale, President

4207228.1